**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

SONRAI MEMORY LIMITED,

Plaintiff,

vs.

ORACLE CORPORATION,

Defendant.

Case No. 6:21-cv-01023-ADA

**JURY TRIAL DEMANDED**

**ORACLE'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION....1**

**II. FACTUAL BACKGROUND....1**

A. Sonrai's Infringement Allegations....1

B. Oracle's Witnesses and Evidence Are in the Northern District of California....2

C. Key Third-Party Witnesses Are in or Near the Northern District of California....3

D. Plaintiff's Witnesses and Evidence, Including All Inventors, Are in Europe....5

**III. ARGUMENT....5**

A. The Convenience of Multiple Witnesses Located in the Northern District of California Strongly Favors Transfer....6

B. The Availability of Compulsory Process Strongly Favors Transfer....9

C. The Relevant Sources of Proof Strongly Favor Transfer....10

D. The Local Interests Strongly Favor Transfer....10

E. The Remaining Factors Are Neutral....11

**IV. CONCLUSION....13**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)....................9

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020)....................6

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)....................5, 10

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021)....................10, 11, 12

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014)....................9

*Bascom v. Maxim Integrated Prods., Inc.*,
534 F. Supp. 2d 700 (W.D. Tex. 2008)....................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)....................6, 9, 10

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021)....................7, 9, 11

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021)....................10

*In re Google*,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017)....................12

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)....................10

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021)....................12

*In re Juniper Networks, Inc.*,
No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021)....................11

*Magic Cross Ranch, L.P. v. Manion*,
No. 3:12-CV-00541-P, 2012 WL 13027449 (N.D. Tex. Sept. 25, 2012)....................12

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009)....6

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....6

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)....13

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ....7

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ....5

## I. INTRODUCTION

Sonrai's patent infringement accusations in this case implicate numerous party and third-party witnesses located in the Northern District of California ("NDCA"), where they are responsible for the accused products and possess knowledge on related subjects. In contrast, this case has no apparent substantive connection to this District. Accordingly, Oracle respectfully moves under 28 U.S.C. § 1404(a) for this action to be transferred to NDCA.

Sonrai asserts infringement of U.S. Pat. No. 8,193,792 (the "'792 patent") by certain Intel processors contained in Oracle's Exadata and Cloud servers. The Oracle personnel who are responsible for, and are potential trial witnesses regarding, the technical development and marketing of the accused servers are located in NDCA. Sonrai's accusations also directly implicate the knowledge of several Intel personnel, including employees responsible for interactions with Oracle related to the accused Oracle servers and Intel processors, Intel's marketing of the accused processors, their technical operation, financial and licensing issues, and Intel prior art technology. These potential Intel trial witnesses likewise are located in NDCA (and, in a few instances, in nearby Oregon). Meanwhile, no Oracle or Intel personnel with relevant knowledge regarding the accused feature are known to be located in this District—and Sonrai, a patent assertion entity based in Ireland, has no known presence or employees in this District whatsoever.

Because each of the convenience factors weighs strongly in favor of transfer or is neutral, transfer to NDCA, the "clearly more convenient" forum, is warranted under § 1404(a).

## II. FACTUAL BACKGROUND

### A. Sonrai's Infringement Allegations

Sonrai's Complaint asserts the '792 patent against Oracle "servers and services utilizing Intel processors with Fully Integrated Voltage Regulators." (Dkt. 1, Comp. ¶ 9.) The Complaint

further specifically identifies Oracle's "Exadata servers and Oracle services such as Oracle Cloud Infrastructure, Oracle Cluster Networking, and Oracle Cloud at Customer" as products that allegedly contain the accused Intel processors. (*Id.*) In the claim chart attached to its Complaint, Sonrai relies on Intel documents pertaining to Intel technology as the alleged support for Sonrai's infringement allegations. (*See* Dkt. 1-2, Sonrai Claim Chart at 5–20.) Sonrai's claim chart cites Oracle materials only for the limited purpose of showing that Oracle servers contain the Intel processors in question. (*See id.* at 2–3.)

Sonrai has also filed in this District substantively identical complaints against six other customers of Intel processors.[1] Five of those cases have been stayed, before any responsive pleadings were filed, pending parallel ITC proceedings against their respective defendants. The sixth case was filed on the same day as this action, and its defendant, Google, has also moved for transfer to NDCA. *See Sonrai Memory Ltd. v. Google LLC*, No. 6:21-cv-1024-ADA (W.D. Tex.), Mot. to Transfer.

**B. Oracle's Witnesses and Evidence Are in the Northern District of California.**

The Oracle personnel with primary responsibility for the accused Oracle products are all located in NDCA. (*See* Ex. 1, Alasti Decl. ¶¶ 5-6.) For example, Oracle's Senior Vice President of Hardware Development, Ali Alasti, works at Oracle's offices in Santa Clara, California, where he is responsible for the design and development of the accused Oracle Exadata and Cloud server hardware. (*Id.* ¶ 5.) Oracle's Vice President of Business Development, Dan Pfleger,

[1] *See Sonrai Memory Ltd. v. Amazon.com, Inc.*, No. 6:21-cv-787 (W.D. Tex.); *Sonrai Memory Ltd. v. Dell Techs. Inc., EMC Corp.*, No. 6:21-cv-788 (W.D. Tex.)*; Sonrai Memory Ltd. v. Lenovo Group Ltd. and Lenovo (United States) Inc.*, No. 6:21-cv-790 (W.D. Tex.)*; Sonrai Memory Ltd. v. LG Elecs. Inc.; LG Elecs. U.S.A., Inc.*, No. 6:21-cv-791 (W.D. Tex.); *Sonrai Memory Ltd. v. Samsung Elecs. Co., Ltd. and Samsung Elecs. America, Inc.*, No. 6:21-cv-790 (W.D. Tex.).

works at Oracle's offices in Redwood City, California, where he is responsible for the sales and marketing of the accused Oracle Exadata and Cloud servers. (*Id.* ¶ 6.) Documents relating to work conducted by Mr. Alasti and Mr. Pfleger, which are potentially relevant to this litigation, are maintained and accessed from their respective work locations in northern California. (*Id.* ¶ 7.) Oracle is not aware of any potential trial witnesses with knowledge regarding the accused feature that are located in the Western District of Texas ("WDTX"). (*Id.* ¶ 8.)

### C. Key Third-Party Witnesses Are in or Near the Northern District of California.

As noted above, Sonrai's infringement accusations are directed against the functionality of processors developed and manufactured by third party Intel. (*See* Dkt. 1, Comp. ¶ 9.) Intel is headquartered in Santa Clara, California, and several Intel personnel with knowledge relevant to the subject matter of this case are located in that area. (Ex. 2, Herrgott Decl. ¶¶ 6-14.) For example, Intel Regional Application Engineering Manager, Chuck Brown, works at Intel's office in Folsom, California, where he is responsible for Intel's technical interaction with Oracle relating to the incorporation of the accused Intel processors into Oracle servers. (*Id.* ¶ 12.) Intel Senior Staff Analog Design Engineer, Shunjiang Xu, works at Intel's office in Santa Clara, California, where he is responsible for power delivery and FIVR for Intel's server processors. (*Id.* ¶ 7.) Intel General Manager and Vice President, Greg Ernst, works at Intel's office in Santa Clara, California, where he is responsible for managing the marketing of the accused Intel processors. (*Id.* ¶ 10.) Intel Senior Principal Engineer, Sanjeev Jahagirdar, works at Intel's office in Folsom, California. (*Id.* ¶ 8.) Mr. Jahagirdar previously worked on the power management of Intel's Penryn products, which pre-date the '972 patent and were relied upon as prior art in earlier litigation involving the '972 patent. (*Id.*; Ex. 3, Penryn Paper.) Intel Principal Engineer, Shaun Conrad, also works at Intel's office in Folsom, California, where he works on

power management for the accused Intel products. (Ex. 2, Herrgott Decl. ¶ 13.) Intel personnel who are responsible for patent licensing and financial information related to the accused Intel processors are likewise located in northern California, at Intel's Santa Clara headquarters. (*Id.* ¶¶ 1, 14.)

Moreover, Intel Senior Principal Engineers Ted Burton and Steve Gunther, who were involved in developing and implementing the accused FIVR technology, are located near northern California, at Intel's Hillsboro, Oregon, office. (*Id.* ¶¶ 15-16.) Hillsboro is approximately 650 miles from San Francisco, California, but is more than 2,000 miles from Waco, Texas. (Ex. 4.)

Intel is not aware of any of its employees with knowledge regarding the accused features of the processors accused in this case who are located in the WDTX. (Ex. 2, Herrgott Decl. ¶ 5.) No research or development work for the accused functionality of the processors accused in this case is conducted at Intel's facility in Austin, Texas. (*Id.*)

Intel technical documents relating to the accused features of the processors accused in this case are accessible at Intel's headquarters in Santa Clara, California. (*Id.* ¶ 17.)

Former Intel employee Xia Dai is the sole named inventor of U.S. Pat. No. 6,792,551, which was relied upon as prior art in earlier litigation involving the '972 patent (the "Dai Prior Art"). (Ex. 5, Dai Prior Art.) Mr. Dai is located in San Jose, California. *Id.*

Atmel Corp.—a designer and manufacturer of semiconductors founded by former Intel employee George Perlegos—was the '792 patent's initial assignee and employed the three named inventors when they conceived of the alleged invention. (Ex. 6, WSJ Article; Ex. 7, '792 Patent.) Atmel Corp. maintained its headquarters in San Jose, California, from its founding in 1984 until 2016, when it was acquired by Microchip Technology. (Ex. 8, Capital IQ Report.)

George Perlegos and other former Atmel Corp. employees continue to reside in NDCA. (Ex. 9, Perlegos Linked-In Profile.)

### D. Plaintiff's Witnesses and Evidence, Including All Inventors, Are in Europe.

Plaintiff Sonrai is an Irish company with its principal place of business in Dublin, Ireland. (Dkt. 1, Comp. ¶ 2.) Sonrai was founded two years ago, with the apparent purpose of asserting acquired patents. The '792 patent-in-suit has three named inventors, each of whom resides in Dresden, Germany. (Ex. 7, '792 Patent.) The original assignee identified on the face of the '792 patent when it issued in 2012 is Atmel Corp., which the patent states is based in "San Jose, CA." (*Id.*) Neither Sonrai nor the named inventors have any known connection to WDTX.

## III. ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice," a court may transfer a case to any district where the case could have been brought. 28 U.S.C. § 1404(a). To evaluate a request for transfer, courts in the Fifth Circuit weigh four private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Courts also consider four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *In re Volkswagen*, 545 F.3d at 315). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience

factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

This case could have been brought in NDCA, where Oracle has multiple facilities. As discussed below, the private and public interest factors overwhelmingly favor transfer to NDCA.

### A. The Convenience of Multiple Witnesses Located in the Northern District of California Strongly Favors Transfer.

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *see also In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020) (same). When analyzing this factor, courts "must consider" the convenience of both "possible party witnesses" and non-party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). Here, numerous party and third party potential trial witnesses are located in NDCA—whereas Oracle is unaware of any potential trial witnesses in WDTX.

The infringement accusations in this case are directed against processors made by third party Intel. (Dkt. 1, Comp. ¶ 9.) As a result, several Intel personnel—and at least one former Intel employee—located in NDCA have relevant knowledge and are potential trial witnesses:

- **Chuck Brown**, Regional Application Engineering Manager, located in Folsom, California, is responsible for technical coordination with Oracle relating to the accused Intel processors' incorporation into Oracle products.
- **Shunjiang Xu**, Senior Staff Analog Design Engineer, Shunjiang Xu, located in Santa Clara, California, is responsible for power delivery and FIVR (*i.e.*, the accused fully integrated voltage regulator feature) for Intel's server processors.
- **Greg Ernst**, General Manager and Vice President of Marketing, located in Santa Clara, California, is responsible for managing the marketing of the accused Intel processors.
- **Sanjeev Jahagirdar**, Senior Principal Engineer, located in Folsom, California, worked on aspects of Intel's prior art Penryn processors and is also an inventor of prior art U.S. Pat. No. 7,953,993, both of which were relied on as prior art in previous litigation involving the '972 patent.

- **Shaun Conrad**, Principal Engineer, located in Folsom, California, works on power management, which relate to the accused features.

- **Tom Herrgott**, Director of Finance, located in Santa Clara, California, has sales and financial accounting knowledge regarding the accused Intel processors, including Intel's sales of those processors to Oracle.

- **Xia Dai**, a former Senior Design Engineer at Intel who currently resides in San Jose, California, is the sole named inventor of U.S. Pat. No. 6,792,551. The Dai prior art is one of the prior art references relied on in previous litigation involving the '972 patent.

(Ex. 2, Herrgott Decl. ¶¶ 6-14.) The testimony of each of these witnesses is directly relevant to key trial issues in this litigation, including regarding the technical structure and operation of the accused products, invalidity based on prior art, and damages.

It is clearly more convenient for these non-party witness to testify at trial in NDCA, where they are located, rather than travel over 1,500 miles to WDTX. *See In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."); *Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008) (explaining convenience of non-party witnesses is generally given more weight than convenience of party witnesses). Moreover, extra travel time would be required for these witnesses to appear in Waco, Texas, in particular. *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("There is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S.").

As noted above, Intel has also identified two witnesses located in Hillsboro, Oregon, who have knowledge regarding the functionality of Intel's accused processors. (Ex. 2, Herrgott Decl. ¶¶ 15-16.) These witnesses are significantly closer to NDCA than to WDTX. Further, Intel

operates a daily shuttle flight between its facilities in Oregon and Santa Clara, which allows employees to quickly and conveniently travel between the two locations (but does not operate any such flights in Texas). (*Id.* ¶ 18.) It therefore would be significantly more convenient for Intel's Oregon personnel to testify in NDCA.

Like most of the relevant Intel employees, the Oracle personnel who are responsible for the accused Oracle Exadata and Cloud servers that contain the allegedly infringing Intel processors are also located in NDCA:

- **Ali Alasti**, Senior Vice President of Hardware Development, located in Santa Clara, California, is responsible for the design and development of the accused Oracle Exadata and Cloud servers.
- **Dan Pfleger**, Vice President of Business Development, located in Redwood City, California, is responsible for sales and marketing related to the accused Oracle Exadata and Cloud servers.

(Ex. 1, Alasti Decl. ¶¶ 5-6.) The testimony of these potential trial witnesses is relevant to the technical structure and operation of the accused products, as well as to damages.

George Perlegos—the founder and CEO of the '972 patent's original assignee, third party Atmel Corp.—and other former Atmel Corp. employees also reside in northern California. (Exs 6, 9.) These individuals are likely to have relevant knowledge regarding attempts to commercialize the claimed invention, as well as the asserted patent's licensing, ownership, and valuation.

In contrast to the many Intel, Oracle, and other witnesses located in NDCA, there do not appear to be any potential witnesses with knowledge regarding the accused technology located in WDTX. Oracle is unaware of any personnel located in this District who have knowledge regarding the accused feature. (Ex. 1, Alasti Decl. ¶ 8.) Intel likewise has indicated that it is not aware of any personnel with such knowledge who are located here. (Ex. 2, Herrgott Decl. ¶ 5.) Sonrai, for its part, has no apparent ties whatsoever to this District. Sonrai is an Irish company

with its principal place of business in Ireland—and no apparent presence here. (Dkt. 1, Comp. ¶ 2.) Meanwhile, the three inventors of the ’972 patent all reside in Dresden, Germany. (Ex. 7, ’792 Patent.) They “will be required to travel a significant distance no matter where they testify.” *In re Genentech*, 566 F.3d at 1344.

The Federal Circuit has found that “when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff’s chosen forum, the witness-convenience factor favors transfer.” *In re Google LLC*, 2021 WL 4427899, at *4. That is the case here, where numerous non-party and party witnesses reside in NDCA and no known witnesses reside in WDTX. Accordingly, the convenience of witnesses factor heavily favors transfer.

**B. The Availability of Compulsory Process Strongly Favors Transfer.**

A venue’s ability to compel testimony through its subpoena power is “an important factor in the § 1404(a) calculus.” *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). This factor “will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.” *In re Apple, Inc.*, 581 F. App’x 886, 889 (Fed. Cir. 2014); *see also In re Genentech*, 566 F.3d at 1345 (where “the transferee venue is a venue with usable subpoena power,” this factor “weighs in favor of transfer, and not only slightly”). As noted above, there are no known potential trial witnesses in this District—third-party or otherwise. In contrast, there are multiple non-party potential trial witnesses who would be subject to NDCA’s subpoena power, including witnesses with critical information regarding the accused Intel processors supplied to Oracle. Where the Complaint has “specifically identified” relevant third parties “as a basis for its infringement allegations”—such as Sonrai’s assertion against Intel processors— and where that third party’s offices and employees are

located in the transferee forum, the availability of compulsory process weighs heavily in favor of transfer. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021).

**C. The Relevant Sources of Proof Strongly Favor Transfer.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d at 1345. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.*; *see also In re Apple Inc*, 979 F.3d at 1340. Beyond the physical location of documents, "the location of document custodians and the location where documents are created and maintained, which may bear on the ease of retrieval," are also relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Documents relevant to this case are located in NDCA. In particular, Intel technical relating to the accused technology are primarily generated and maintained from Intel facilities in NDCA and in nearby Oregon. (Ex. 2, Herrgott Decl. ¶ 17.) Messrs. Alasti and Pfleger (and their staffs) likewise maintain Oracle's documents relating to the accused products from their respective locations in NDCA. (Ex. 1, Alasti Decl. ¶ 7.) This factor therefore also heavily favors transfer.

**D. The Local Interests Strongly Favor Transfer.**

NDCA has a local interest in this dispute because "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). As noted above, the Oracle personnel with primary responsibility for technical and marketing activities relating to the accused Exadata and Cloud servers are located in NDCA. Similarly, the Intel employee responsible for interacting with Oracle in relation to the allegedly infringing Intel processors is located in NDCA, along with several other

Intel employees having relevant knowledge. These ties give NDCA a strong local interest in adjudicating this suit.

In contrast, this suit does not implicate the local interests of WDTX. Any connections that Oracle or Intel have with this District are not related to this litigation and therefore are not relevant to the transfer analysis. *See In re Google LLC*, 2021 WL 4427899, at *6 ("Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer."). Further, as an Irish entity with no presence in this District, Sonrai's "ties with Texas are not even 'recent and ephemeral'; they are nonexistent." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021). Accordingly, this factor also heavily favors transfer. *See In re Apple*, 2021 WL 5291804, at *5 (where "only the Northern District of California has significant connections to the events that gave rise to this suit, the local interest factor weighs strongly in favor of transfer").

**E. The Remaining Factors Are Neutral.**

Each of the remaining private and public interest factors is neutral.

**1. The Practical Considerations Are Neutral.**

The practical considerations factor is neutral because neither WDTX nor NDCA has any significant experience with the '792 patent. Although Sonrai has filed other cases in this District asserting the same patent, all but one of those cases have been stayed pending related ITC proceedings—and the stays went into effect before any answers, substantive motions, or other pleadings were filed. Moreover, to the extent those case resume at some future point— after the ITC action and any related appeals have concluded—the defendants may seek to transfer.

In the only co-pending case that is not stayed (which was filed on the same day as this case), the Court likewise has yet to gain any substantive experience with the patent. Further, the

defendant in that case, Google, has also moved for transfer to NDCA. *See Sonrai Memory Ltd.*, No. 6:21-cv-01024-ADA, Mot, to Transfer. Notably, "it is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district." *In re Google*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017). As a result, this factor does not favor either forum.

**2. Court Congestion Either Favors Transfer or Is Neutral.**

The court congestion factor also either favors transfer or is neutral. This Court has a very large number of patent cases (Ex. 10), which is significantly more than any of the judges in NDCA. Further, as recently as last month, the Federal Circuit "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple*, 2021 WL 5291804, at *4 (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021)).[2]

**3. Considerations Regarding Familiarity With Governing Law And Conflict Of Laws Are Neutral.**

Both districts are familiar with the relevant patent laws, and this case presents no material issues concerning conflict of laws or the application of foreign law. As a result, those factors are neutral. *See Magic Cross Ranch, L.P. v. Manion*, No. 3:12-CV-00541-P, 2012 WL 13027449, at *3 (N.D. Tex. Sept. 25, 2012) ("The Court finds that the other public interest factors are neutral.

[2] There also is no reason, under the circumstances, for this factor to be given significant weight in the transfer analysis. Sonrai accuses a functionality implemented by Intel processors that have been sold since at least 2013. Sonrai (and its predecessor assignees) nevertheless waited until 2021 to bring suit against Oracle. Given this fact, there is no cognizable reason why the time to trial would be of significance. *See In re Juniper*, 14 F.4th at 1322 (holding relative time to resolution is not of "particular significance" where there is no reason "that a more rapid disposition of the case that [*sic*] might be available in Texas is worthy of important weight").

Both [districts] are equally capable of applying the law that will govern the case. No issues exist which suggest any potential problems of conflict of laws or applying foreign law.”).

## IV. CONCLUSION

Because each of the private and public interest factors either strongly favors transfer or is neutral, NDCA is clearly the more convenient forum. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) (“With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is ‘*clearly* more convenient.’”) (emphasis in original). Oracle therefore respectfully requests that the Court transfer this case to NDCA pursuant to 28 U.S.C. § 1404(a).

Dated: January 7, 2022

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Fax: (512) 495-6401
steve.ravel@kellyhart.com

***Attorneys for Defendant Oracle Corp.***

David Rokach (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Email: david.rokach@kirkland.com

Gregory S. Arovas (*Pro Hac Vice*)
Todd M. Friedman (*Pro Hac Vice*)
Alex Henriques (*Pro Hac Vice*)
Leslie M. Schmidt (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com
Email: leslie.schmidt@kirkland.com

Abigail Lauer Litow (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Email: abigail.litow@kirkland.com

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 6, 2022, Oracle's counsel conferred in good faith with opposing counsel pursuant to Local Civil Rule 7(g), and Sonrai is opposed to the relief sought. Accordingly, this Motion and the relief requested herein are submitted to the court for resolution.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on January 7, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel